## PROVIDENT CHEMICAL WORKS v. HYGIENIC CHEMICAL CO.

(Circuit Court, S. D. New York. May 14, 1909.)

1. CONTRACTS (§ 206*) — CONSTRUCTION — AGREEMENT TO SHARE COST AND EXPENSE OF SUIT—"EXPENSE."

An agreement between two parties to share in paying the "cost and expense" of a suit against one of the parties includes the costs taxed against such party as a part of the "expense" of the suit.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 206.*

For other definitions, see Words and Phrases, vol. 3, pp. 2590–2593; vol. 8, p. 7657.]

2. CONTRACTS (§ 206*)—CONSTRUCTION—AGREEMENT TO SHARE COST AND EXPENSE OF PATENT SUITS.

Plaintiff and defendant, each of whom was charged with infringement of a patent and interested in establishing its invalidity, entered into a contract to share equally the cost and expense of defending any and all suits brought against either or its customers. A suit against plaintiff resulted in a decision of the Circuit Court of Appeals affirming the validity of the patent, and an application for a writ of certiorari to the Supreme Court was denied. Subsequently the owner of the patent brought a suit for infringement against defendant, in which the only litigated issue was as to defendant's infringement. Held, that the cost and expense of such suit were not within the contract, which must be construed as intended to apply only to suits in which the parties had a mutual interest.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 206.*]

At Law.

This is an action submitted upon agreed facts, and arising upon a contract between the parties to share the "cost and expense" of defending certain suits

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

brought by the Rumford Chemical Works upon patent No. 474,811. Both plaintiff and defendant were concerned in the manufacture of granulated phosphate, upon the production of which the patent in question was taken. They were each interested in establishing the invalidity of the patent, if possible, and, being individually each threatened with suits by the Rumford Chemical Works, they entered into an agreement on May 17, 1900, by which they mutually promised "that any and all suits brought by said Rumford Chemical Works * * * shall be fully and faithfully defended, as follows: If brought against any person or persons * * * west of the Mississippi river, or in the states of Wisconsin, Illinois, Mississippi, and Tennessee, the same shall be defended under the supervision of the said Provident Chemical Works through attorneys appointed by it; and, if brought against a resident of any other of the United States, the same shall be defended under the supervision of said Hygienic Chemical Company through attorneys appointed by it, the cost and expense of such defenses to be equally borne by the parties hereto."

The Rumford Chemical Works commenced a test suit against the plaintiff and two of its customers on the 15th day of June, 1900, which eventually resulted in the establishment of the patent in favor of the Rumford Chemical Works by the Circuit Court of Appeals for the Second Circuit on the 7th day of July, 1904. Application was made for a writ of certiorari to the Supreme Court, and this was denied on December 9, 1904, thus closing this litigation.

The parties shared all expenses of this litigation during its continuance, in accordance with the contract, but the defendant refuses to pay the costs and disbursements which the complainant in that suit taxed against this plaintiff, and which amounted to $4,646.46, and likewise refuses to pay one-half the disbursements of the plaintiff to its attorneys, Von Briesen & Knauth, which were incurred for the purpose of reducing these costs. The amount of these is $312.90. The plaintiff sues for one-half of each of these sums under the contract. The position of the defendant is that the costs taxed were not part of the "cost and expense of such defenses."

The defendant likewise pleads a counterclaim which arises upon the contract under the following circumstances: The Rumford Chemical Works had brought other suits beside the one which was made a test, and one of these suits was against the Hygienic Chemical Company. This was dismissed on July 21, 1904, by an order entered in the clerk's office of this court dismissing the bill with costs in favor of the defendant by reason of the failure to except or reply to the answer, but the Rumford Chemical Works began another suit on August 2, 1904, in which the Hygienic Chemical Company was defendant, together with certain individuals. This suit came on for a hearing before Judge Holt on April 12, 1907, at which he dismissed the bill. Upon appeal to the Circuit Court of Appeals for this circuit, Judge Holt's decree was reversed on February 11, 1908, and a decree for an injunction and accounting was entered in accordance with the opinion of the Circuit Court of Appeals upon its mandate. A writ of certiorari has been granted by the Supreme Court in that case, and the proceedings are still pending undecided in the Supreme Court. After the decision of the Circuit Court of Appeals in the case against the plaintiff herein, the plaintiff notified the defendant that it would not be liable for any further cost in carrying on the litigation between the Rumford Chemical Works and the defendant, but this notice the defendant repudiated and alleged that it would hold the plaintiff to the contract. The defendant has paid the sum of $2,065.83 for disbursements and legal services since the decision of the Circuit Court of Appeals in the case of the Rumford Chemical Works against the plaintiff herein, and claims the right to charge the plaintiff with one-half of that sum, or $1,032.91, under the contract. The legal services from December 8, 1905, were rendered by different attorneys from those agreed upon by both parties to conduct the case of the Rumford Chemical Works against the plaintiffs. The substitution of these attorneys was without the assent of the plaintiff.

The decision of the Circuit Court of Appeals in the case against the defendant is reported in 159 Fed. 436, 86 C. C. A. 416, and this is by reference made a part of the agreed facts upon which the case is to be heard. It appears from this decision that the second suit turns entirely upon the question of whether the defendant had, in fact, infringed patent No. 474,811, not upon the question of the validity of that patent. The Circuit Court of Appeals decided

that by its share in the first suit, in which this plaintiff was defendant, it had become a privy to the infringement, and that an injunction should go.

Gardenhire & Jetmore, for plaintiff.
Jellenik & Stern, for defendant.

HAND, District Judge (after stating the facts above). I will first consider the plaintiff's claim. The words "cost and expense of such defenses" ought reasonably to be interpreted as including any expense directly caused by defending the suits. It may be that "cost," if used alone, could have been limited to a disbursement made in exchange for a quid pro quo, though we do use the word also to indicate loss without anything received in exchange, as in the expression, "You will find it to your cost"; but the word "expense" clearly covers any disbursement, whether made in purchase of the services of lawyers, or without any quid pro quo whatever. It must include all sums whose payment became necessary because the suits were defended, rather than settled without litigation. Among the sums which the plaintiff was obliged to pay because it had interposed a defense, were the sums taxed for costs and disbursements to the complainant in the patent suit, the Rumford Chemical Works. These were an expense arising from the defense, for the reason that without any defense there could never have been any such expense. The parties certainly meant to share every loss which should be occasioned by the impending contest, and the contest could not have gone on without assuming the risk of costs in case of defeat. I do not suppose that the plaintiff would have consented to allow its case to be conducted by attorneys chosen by the defendant, if it had supposed that the bill of costs those attorneys were running up was a matter of indifference to the defendant.

Judge Levintritt's decision in Munro v. Maryland Casualty Co., 48 Misc. Rep. 183, 96 N. Y. Supp. 705, is distinguishable. In that case the casualty company had agreed to assume the defense of any suit brought against the insured for negligence. This promise was "to defend at its own cost." Such an agreement made by one in the position of a lawyer certainly did not include the obligation to pay the costs in case of defeat. The promise was, not to pay all expense which might result from contesting the plaintiff's claims, but to conduct the defense of the litigation.

I think, therefore, that the plaintiff should have judgment upon its claim for the full amount of $2,323.23.

Next, as to the counterclaim of the defendant. The question is, whether the parties intended to share the expenses of more than one litigation carried to a conclusion. The words used are "any and all suits," and these words were clearly required by the fact that the Rumford Chemical Works, as is usual, purposed to carry on a general attack against both the parties hereto and their customers. I have no doubt that the cost of all litigation in all these suits was to be shared by the parties up to a time when it became reasonably certain that the validity of the patent had been definitely decided. After that point it could not have been to the mutual advantage of either party to continue to fight, although it might have been to the separate advantage of either. However, it was the mutual advantage of both

which dictated the contract in question, and their obligations must be limited to that purpose. It was reasonably certain, after the denial of the writ of certiorari by the Supreme Court in the suit of Rumford Chemical Works against the plaintiff, that the validity of the patent was established. The success which the defendant had in the subsequent litigation, and the possibility of its ultimate success in the Supreme Court, does not, so far as the statement of facts goes, depend upon the invalidity of the patent, but upon whether the defendant was in fact an infringer. If the validity of the patent is still in issue, this fact should have been stated in the agreed facts, and, as the facts are, I can only consider the decision of the Circuit Court of Appeals, from which it clearly appears that the second suit did not involve the validity of the patent. So far as the plaintiff is concerned, the contract conclusively established that, whether the defendant was an infringer or not, it had an active interest in the litigation. After that litigation was determined, the plaintiff could not have had the slightest interest in the question of whether the Rumford Chemical Works could hold the defendant in a suit.

I conclude, therefore, that the second litigation was not within the meaning of the contract between the parties, and that therefore the plaintiff was not responsible to the defendant for the costs incurred in that contest.

I therefore direct that judgment be entered for the plaintiff in the sum of $2,479.67, with interest from December 29, 1904, upon $2,323.-23, and that the counterclaim be dismissed upon the merits, with costs.

I do not find any statement in the agreed facts showing when the bill for services was paid to Von Briesen & Knauth, and so I cannot award interest upon that sum, unless the parties agree.